**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 3, 2026**

# In the Court of Appeals of Georgia

A25A1900. SERVICE COMPLETE, LLC v. OXL,T LLC.

DOYLE, Presiding Judge.

After partially completing contracted construction work on a damaged commercial building for which OXL,T LLC failed to pay, Service Complete, LLC, filed suit for breach of contract or, alternatively, quantum meruit. OXL,T moved to dismiss, and after a hearing thereon, the court directed the parties to brief the issue of whether the contract conflicted with certain provisions of OCGA § 33-23-1 et seq., regulating, inter alia, "public adjusters." After briefing, the trial court dismissed the complaint as void pursuant to those provisions, and Service Complete now appeals the dismissal. We affirm for the reasons that follow.

A trial court may dismiss a complaint under OCGA § 9-11-12 (b)(6) for failure to state a claim if the "complaint lacks any legal basis for recovery." *Auto-Owners Ins. Co. v. Tracy*, 344 Ga. App. 53, 54 (806 SE2d 653) (2017) (citation and punctuation omitted). This occurs if

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

*Anderson v. Flake*, 267 Ga. 498, 501(2) (480 SE2d 10) (1997) (citations omitted). For the purpose of this determination, documents attached to and incorporated into the pleadings are considered to be a part of them. *Montia v. First-Citizens Bank & Trust Co.*, 341 Ga. App. 867, 868–69 (801 SE2d 907) (2017). This Court reviews a trial court's ruling on a motion to dismiss de novo, viewing as true all well-pleaded material allegations in the complaint, but "we are under no obligation to adopt a party's legal

2

conclusions based on these facts." *Tracy*, 344 Ga. App. at 54 (citation and punctuation omitted). Moreover, if a case turns on statutory interpretation and resolution of questions of law, we apply a de novo standard of review. See *Amazing Amusements Group, Inc. v. Wilson*, 353 Ga. App. 256 (835 SE2d 781) (2019).

So viewed, the allegations in the amended complaint show that OXL,T owned a commercial building that was damaged by fire in August 2023. A few days after the fire, OXL,T executed a document ("the Agreement") with Service Complete, which authorized Service Complete "to act as its agent while negotiating with [OXLT's] insurance adjuster [Auto-Owners Insurance Company ("Auto-Owners")] to complete a mutually agreeable Scope of Work for the repairs and services" necessary to remediate the property.

Service Complete alleged that it spent considerable time "negotiating the amounts to be paid by Auto-Owners to OXL,T and to Service Complete to perform the Scope of Work" and through its negotiations it increased the amount of insurance payments from Auto-Owners for the damage by $840,693.94 because of its use of certain property-claim estimating software and experience negotiating such claims.

From August to December 2023, Service Complete finished part of the work, and Auto-Owners directly reimbursed it $300,000. In January 2024, Auto-Owners tendered the remaining amount of the policy to OXL,T, and although Service Complete provided additional remediation and construction work through April 2024, OXL,T refused to remit any payment for the invoices related to that work, citing Service Complete's failure to pay a subcontractor and quality issues, among other things.

Unable to resolve the matter, Service Complete filed suit, arguing that OXL,T breached the Agreement and owed $145,888.18 for unpaid construction invoices and $168,138.79 for the value of Service Complete's negotiations with Auto-Owners. OXL,T answered, raising affirmative defenses of failure to state a claim, fraud, unconscionability, unclean hands, and stated a general reservation of all other defenses under OCGA §§ 9-11-8(c) and 9-11-12(b), among others; it also counterclaimed for breach of contract. OXL,T then moved to dismiss the complaint pursuant to OCGA § 9-11-12(b)(6), arguing that the Agreement was not enforceable due to a lack of meeting of the minds regarding necessary terms such as the prices for services.[1] In

---

[1] The Agreement stated that "[OXL,T] understands and agrees that [Service Complete] works for the price agreed upon by [Service Complete] and the insurance

response, Service Complete amended its complaint, adding a claim for quantum meruit and/or unjust enrichment, and it responded to the motion to dismiss, disputing OXL,T's claim that any necessary terms were missing.

After a hearing on the motion to dismiss, the trial court ordered the parties to brief the issues of whether (1) Service Complete performed services as a "public adjuster" as defined by OCGA § 33-23-1(a)(13); (2) if so, whether it complied with statutory licensing and contract requirements for public adjusters; and (3) assuming that it did act as a public adjuster, whether any failure to comply with such licensing and contract requirements had any legal impact on the Agreement. The parties responded, and thereafter, the trial court dismissed the complaint, finding that Service Complete's activities fell within the definition of public adjuster as defined by OCGA § 33-23-1(a)(13). The court found that even though its activities met the definition of a public adjuster, Service Complete was not licenced to act as such nor did it follow the contract requirements for public adjusters under OCGA § 33-23-43.1. The court determined that pursuant to OCGA § 33-23-43.8(k), contractors are prohibited from acting as public adjusters in connection with the same property, and thus, the contract

_____

adjuster [at Auto-Owner's] plus the amount of the [OXL,T's] deductible."

was void and unenforceable. Because the contract was void, the trial court also determined that Service Complete was prohibited from recovering for the unpaid construction work through its quantum meruit claim, citing *JR Constr./Elec., LLC v. Ordner Constr. Co.*, 294 Ga. App. 453 (669 SE2d 224) (2008). This appeal followed.

1. Pursuant to OCGA § 13-8-1, "[a] contract to do an immoral or illegal thing is void. If the contract is severable, however, the part of the contract which is legal will not be invalidated by the part of the contract which is illegal." "If the [illegal] contract is executed it will be left to stand; if it be executory neither party can enforce [it]." *Jones v. Faulkner*, 101 Ga. App. 547, 548–49 (114 SE2d 542) (1960) (citations and quotation marks omitted). Moreover,

> when a statute requires a person to obtain a license before engaging in a certain business, and the terms of the statute show that it is intended not merely as a revenue measure but to regulate that business in the public interest, a person seeking to recover under a contract to engage in such business must prove that he held the appropriate license in order to enforce his claims under the contract.

*San Miguel Produce, Inc. v. L. G. Herndon Jr. Farms, Inc.*, 308 Ga. 812, 821(5) (843 SE2d 403) (2020) (discussing various licensing statutes). In other words, if the trial court is correct, then Service Complete's complaint was subject to dismissal.

6

Thus, we turn to the statutes at issue, and in so doing, "we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature." *Slakman v. Cont'l Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003) (citations omitted).

Pursuant to OCGA § 33-23-1(a)(13),

"[p]ublic adjuster" means any person who solicits, advertises for, or otherwise agrees to represent only a person who is insured under a policy covering fire ... and other physical damage to real and personal property ... , and any such representation shall be limited to the settlement of a claim or claims under the policy for damages to real and personal property, ... and who, for compensation on behalf of an insured:

(A) Acts or aids, solely in relation to first-party claims arising under insurance contracts that insure the real or personal property of the insured, in negotiating for, or effecting the settlement of, a claim for loss or damage covered by an insurance contract;

(B) Advertises for employment as a public adjuster of insurance claims or solicits business or represents himself or herself to the public as a public adjuster of first-party claims for losses or damages arising out of policies of insurance that insure real or personal property; or

(C) Directly or indirectly solicits business, investigates or adjusts losses, or advises an insured about first-party claims for losses or damages arising out of policies of insurance that insure real or personal property for another person engaged in the business of adjusting losses or damages covered by an insurance policy.

Under OCGA § 33-23-43.1(a), "[n]o person may act or hold himself or herself out to be a public adjuster in this state unless such person holds a public adjuster license issued by the Commissioner." It is undisputed that Service Complete did not refer to itself as a public adjuster, and it did not have a license to act as a public adjuster. Nevertheless, the complaint, Agreement, and admissions by Service Complete at the hearing establish that it "agree[d] to represent [OXL,T,] who is insured under a policy covering fire" damage to real property and for compensation acted or aided "in negotiating for, or effecting the settlement of, a claim for loss or damage covered by an insurance contract[.]" See OCGA § 33-23-1(a)(13)(A). See also *Anderson*, 267 Ga. at 501(2); *Tracy*, 344 Ga. App. at 54; *Montia*, 341 Ga. App. at 868–69.

In 2021, the Georgia Legislature amended OCGA § 33-23-43.8, see Ga. L. 2021 at 365, adding, among other things, the following subsection effective July 1, 2021:

(k) A contractor shall not act as a public adjuster or advertise to adjust claims for any property for which the contractor is providing or may provide contracting services, regardless of whether the contractor: ...

(2) Is authorized to act on behalf of the insured under a power of attorney or other agreement. However, a contractor may discuss or explain a bid for construction or repair of covered property with a residential property owner who has suffered loss or damage covered by a property insurance policy, or the insurer of such property, if the contractor is doing so for the usual and customary fees applicable to the work to be performed as stated in the contract between the contractor and the insured.

In its verified complaint, Service Complete states that "[a]s set out in the Agreement, OXL[,]T agreed that Service Complete would act as 'OXL[,]T's agent while negotiating with [Auto-Owners] to comp1ete a mutually agreeable Scope of Work for the repairs and services that need to be performed," and "Service Complete would complete all necessary work for '*price agreed upon by*' *Service Complete and Auto-Owners*, plus the amount of OXL[,]T's deductible." (Emphasis supplied). Finally, "[u]pon signing the Agreement, Service Complete began working with Auto-Owners and its building consultants to adjust the loss."

Although contractors are allowed to discuss or explain their bid for repair work with an insurer under OCGA § 33-23-43.8(k)(2), to "[a]ct[] or aid[] ... in negotiating for, or effecting the settlement of, a claim for loss" is what a "public adjuster" does as defined by the General Assembly in OCGA § 33-23-1(a)(13)(A). Based on the Agreement and Service Complete's admissions in the amended complaint and at the hearing, the Agreement violated OCGA §§ 33-23-1(a)(13)(A), 33-23-43.1(a), and 33-23-43.8(k) because, intentionally or not, it acted as a "public adjuster" by negotiating OXL'T's policy with Auto-Owners and then providing contracting services related to the same property. Thus, the trial court correctly concluded that the Agreement was void and unenforceable as a matter of law. See *San Miguel Produce, Inc.*, 308 Ga. at 821(5).

2. Service Complete argues that its claims should not be dismissed because there is no evidence it was acting as a fiduciary for OXL,T, and public adjusters are fiduciaries or engage in other conduct that Service Complete did not engage in. While it may be true that licensed public adjusters undertake a fiduciary duty or otherwise collect fees in a manner that is different than Service Complete, the General Assembly has defined "public adjuster" as any person who engages in certain conduct. See

OCGA §§ 32-23-1(a)(13)(A). Simply put, if an entity is engaging in the work of a public adjuster as defined in the statute without meeting requirements of the statute, then the entity cannot recover for damages based on its role as contractor or as a public adjuster. See *San Miguel Produce, Inc.*, 308 Ga. at 821(5).

3. Service Complete also argues that the trial court erred by sua sponte raising the illegal contract defense and by dismissing the case on this basis because OXL,T waived the defense. We disagree.

It is true that OXL,T's answer does not reference OCGA § 33-32-1 et seq. Nevertheless, read broadly, OXL,T's answer preserved the affirmative defense of illegality by stating that it "raises all those affirmative defenses set forth in OCGA § 9-11-8(c)," which includes illegality, and that "none of these defenses are waived." See OCGA § 9-11-8(c), (f) ("All pleadings shall be so construed as to do substantial justice"); *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 64(2) (537 SE2d 670) (2000) ("There is no magic in nomenclature, and we judge pleadings, motions and orders not by their name but by their function and substance, being always mindful to construe such documents in a manner compatible with the best interests of justice."). Compare *Focus Healthcare Med. Center v. O'Neal*, 253 Ga. App. 298, 299(a) (558 SE2d 818)

11

(2002) (reversing the trial court's order dismissing complaint for lack of service despite defendant's failure to appear and raise the waivable defense).

In any event, this Court has explained in relation to a similar statutory scheme that "[a] contract that is null and void is illegal and against the public policy of Georgia and will not be enforced even if the defendant fails to raise this issue as an affirmative defense." *Ga. Receivables, Inc. v. Kirk*, 242 Ga. App. 801, 801–02(2) (531 SE2d 393) (2000) (affirming the trial court's sua sponte grant of summary judgment on the basis of illegality even though not raised by the defendant). See also *Nayani v. Hassanali*, 362 Ga. App. 313, 316(2) (868 SE2d 465) (2022) (citing *Ga. Receivables, Inc.*, 242 Ga. App. at 802(2)); *Bowers v. Howell*, 203 Ga. App. 636, 637–38(1) (417 SE2d 392) (1992) (explaining that despite failure of defendants to raise illegality as a defense in their answer, the issue was not waived because evidence of the plaintiff-contractor's lack of certain licences was introduced without objection during trial). Compare with *Spann v. Davis*, 312 Ga. 843, 846(1) (866 SE2d 371) (2021) (reversing a trial court's dismissal of a complaint based on a type of immunity that was not raised in the defendants' motion to dismiss). In this case, the purpose of the pleading requirements of the Civil Practice Act — "to prevent surprise and to give the opposing party fair

12

notice of what [the plaintiff] must meet as a defense" — was met, and no waiver occurred. *Bowers*, 203 Ga. App. at 637(1). Therefore, this argument is without merit.

4. Finally, Service Complete argues that the trial court erred by finding that the Agreement was void without determining that the Agreement harms the public interest, but no such finding was necessary given the General Assembly's prohibition of such contracts and dual representation via statute. See, e.g., *Nayani*, 362 Ga. App. at 316(2) ("Contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent can not be made the ground of a successful suit and are against public policy." (punctuation omitted)).

*Judgment affirmed. Markle and Padgett, JJ., concur.*